**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No. 1:19-cv-23856-RNS**

URI MARRACHE, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

BACARDI U.S.A., INC., a Delaware corporation
d/b/a THE BOMBAY SPIRITS COMPANY
U.S.A.; and WINN-DIXIE SUPERMARKETS,
INC. d/b/a WINN DIXIE LIQUORS,

      Defendants.

_____/

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>**

Defendants Bacardi U.S.A., Inc. ("BUSA") and Winn-Dixie Supermarkets, Inc. ("Winn-Dixie" and together, "Defendants"), by and through undersigned counsel, file this Opposition to Plaintiff's Motion to Remand.  In support thereof, Defendants state as follows:

**I.      <u>BACKGROUND</u>**

On August 9, 2019, Plaintiff Uri Marrache ("Plaintiff") filed a putative Class Action Complaint individually and on behalf of all others similarly situated, in Florida state court (the "Complaint" or "Compl.," [D.E. 1, Ex. A]).   BUSA produces Bombay Sapphire ® gin ("Bombay" or "Bombay Sapphire gin"), which Plaintiff alleges contains "10 hand-selected botanicals from exotic locations around the world" and that one of the botanicals is Grains of Paradise.  *Id.* ¶¶ 12-13.  Plaintiff asserts that, "adulterating alcohol with grains of paradise is illegal in Florida," citing to Fla. Stat. § 562.455, and claims that BUSA purportedly "adulterates its Bombay Sapphire ® gin with Grains of Paradise for the purpose of sale, in violation of

1

Florida law." *Id.* ¶¶ 17-18, 20.   Plaintiff further alleges that Winn-Dixie knowingly sells Bombay "throughout Florida in contravention with Florida law." *Id.* ¶ 21.  As a result of the foregoing, Plaintiff claims that he and other "similarly situated persons, have been damaged." *Id.* ¶ 22.

Plaintiff brings the action on behalf of a putative class of any persons who purchased Bombay Sapphire gin in Florida, regardless of whether they are Florida citizens, citizens of other states, or citizens of foreign countries.  *Id.* ¶ 1.   The exact number of the class is not known, but Plaintiff states that "there are hundreds of thousands potential class members."  *Id.* ¶ 29. Plaintiff raises causes of action against Defendants under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and for unjust enrichment, seeking reimbursement of the money Defendants received in connection with their sale of the product.

On September 16, 2019, Defendants removed the action to this Court, pursuant to the Class Action Fairness Act ("CAFA").   On October 14, 2019, Plaintiff filed an Amended Complaint.   On October 23, 2019, Plaintiff filed a Motion to Remand ("Motion").   Plaintiff concedes in his Motion that "the amount in controversy exceeds $5,000,000 and **that CAFA applies to this case**" (emphasis added).  [D.E. 16 at 1.]  However, Plaintiff contends that the Court should remand the case to State Court pursuant to the "home state," "local controversy," and/or "discretionary" exceptions to CAFA.

Plaintiff's Motion to Remand is flawed for many reasons.  First, in an attempt to get back into State Court, Plaintiff amended his complaint, after removal, to purportedly limit the putative class to Florida citizens who purchased Bombay in Florida.   [*See* "Amended Complaint," D.E. 13 at 1.]  But the Eleventh Circuit has made clear that courts must assess removability based on the complaint at the time of removal, so the Court cannot consider Plaintiff's Amended

Complaint and amended class definition for the purposes of remand.  Second, Plaintiff's Motion

to Remand is untimely because he filed it more than 30 days after Defendants' removal.  Third,

even if Plaintiff's Motion was timely, Plaintiff has not met his burden of proving that the CAFA

exceptions are applicable in this case.  Finally, even if the Court were to consider the Amended

Complaint, Plaintiff does not meet his burden of proof under any of the CAFA exceptions.

## II.   LEGAL STANDARD

CAFA added a new subsection to the federal statute governing diversity jurisdiction,

which provides that:

> The district courts shall have original jurisdiction of any civil
> action in which the matter in controversy exceeds the sum or value
> of $5,000,000, exclusive of interest and costs, and is a class action
> in which—
>
> any member of a class of plaintiffs is a citizen of a State different
> from any defendant

28 U.S.C. §1332(d)(2).  For conventional diversity jurisdiction pursuant to 28 U.S.C. § 1332(a),

each plaintiff must be diverse from each defendant.  In other words "complete diversity" is

required.  CAFA jurisdiction, which was designed to be very broad, represents a radical shift

with respect to diversity of citizenship.  It only requires "minimal diversity." *Lowery v. Alabama

Power Co*., 483 F.3d 1184, 1201 (11th Cir. 2007).  As a result, CAFA "works a sea change in

diversity jurisdiction for certain class actions."  *Id*. at 1193.  Diversity between any single

member of a class of plaintiffs and "any defendant" confers CAFA jurisdiction.

## III.   ARGUMENT

### A.  Defendants Properly Removed The Case Under CAFA

As Plaintiff concedes, CAFA is satisfied and Defendants timely removed the case to this

Court.  [*See* Notice of Removal, D.E. 1.]  The removal was proper and should be maintained.

First, the putative class is unequivocally larger than 100 members because Plaintiff asserts that

"there are **hundreds of thousands** potential class members." Compl. ¶ 29 (emphasis added). Second, the claims of individual class members are aggregated in determining whether CAFA's jurisdictional threshold is met. *See* 28 U.S.C. § 1332(d)(6). Here, the aggregate amount in controversy is larger than $5,000,000 because Plaintiff asserts the "individual purchase price of the Adulterated Liquor is generally less than $40.00," *id.* ¶ 25, and multiplying that number by "hundreds of thousands" of class members, the amount is over $5,000,000 (*e.g.*, if there were 200,000 class members, the amount in controversy would be close to $8,000,000).

Third, to determine whether minimal diversity exists, the citizenship of all class members, named and unnamed, is considered. *See* 28 U.S.C. § 1332(d)(1)(D). Diversity exists here because the class action purports to represent all persons in the State of Florida who purchased Bombay, which, by definition, includes all persons who were in the State of Florida at any time during the last four years, which includes Florida citizens, non-Florida citizens, and citizens of foreign countries. Since both Bacardi and Winn-Dixie are Florida companies,[1] diversity exists between them and the non-Florida class members.

**B. Plaintiff's Motion To Remand Must Be Considered Based On The Removed Complaint**

Defendants filed their Notice of Removal on September 16, 2019, based on the Complaint Plaintiff filed in State Court, which defines the putative class to include both Florida and non-Florida citizens. This class definition satisfies the CAFA diversity element, which allowed Defendants to remove the matter to federal court. Following removal, and in a blatant attempt to get back into State Court, Plaintiff filed an Amended Complaint [D.E. 13, at 1] to

---

[1] Bacardi did not refuse to stipulate that it is a Florida citizen. Bacardi's counsel asked Plaintiff's counsel to provide the prior pleadings that he had referred to so that Bacardi could consider such a stipulation, but counsel never responded and then went forward with his filing. (See Exhibit A, E-mail from M. Levitt to M. Udell, et al. (Oct. 16, 2019, 12:40 PM).

narrow the putative class to only "citizens of the State of Florida." [2]

The Eleventh Circuit holds that the propriety of removal should be based on the version of the complaint that was removed. *See, e.g., Smith v. Wynfield Dev. Co.,* 238 F. App'x, 451, 454-55 (11th Cir. 2007) (affirming denial of motion to remand and holding that district court's removal jurisdiction is determined at the time of removal, and should not be based on a complaint that is amended after removal); *Poore v. American-Amicable Life Ins. Co. of Texas*, 218 F.3d 1287 (11th Cir. 2000) (*overruled on other grounds*) (holding that the lower court improperly relied on the amended complaint in assessing removal);[3] *see also, e.g., Dewey v. Johnson*, Case No. 08-80344, 2008 WL 11331747 at *1 (S.D. Fla. July 7, 2008) ("In evaluating a motion to remand, the Court looks at the case as it existed at the time of removal."); *Colomar v. Mercy Hosp. Inc.*, Case No. 05-22409, 2007 WL 2083562, at *2 (S.D. Fla. July 20, 2007) (applying the "longstanding rule that courts are to assess jurisdictional facts as they stand at the time of removal" to a complaint removed pursuant to CAFA).[4]

In *Smith v. Wynfield Dev. Co.*, the defendants removed the case based on a "federal

---

[2] This class definition is also flawed and fails to eliminate CAFA jurisdiction, which is addressed below.

[3] The Eleventh Circuit has noted the application of this rule within the CAFA context as well. *See, e.g., Dudley v. Eli Lilly Co.,* 778 F.3d 909, 913 (11th Cir. 2014) (stating in the context of CAFA, that jurisdictional facts are to be evaluated as they stand at the time of removal).

[4] The rationale is that courts are required to guard against a plaintiff amending a complaint in order to defeat an otherwise proper removal by the defendant. *See, e.g., Lieu v. Sandy Sansing Cars, Inc.*, No. 3:07-cv-345, 2007 WL 4287642 at *2 (N.D. Fla. Dec. 5, 2007) ("The court finds it would be unfair to the defendant to order remand when the defendant has expended resources appropriately removing this case and plaintiff's apparent sole motivation in deleting the federal claim and seeking remand was so that the case would be returned to her preferred forum, Florida state court"); *Dewey*, 2008 WL 11331747 at *2 ("Plaintiff amended his complaint for the sole purpose of remanding this action to state court after Defendants went to the expense of removing the action to this Court. Accordingly, the Court will retain jurisdiction of this matter.").

question" under ERISA.  238 F. App'x, at 453.  Subsequently, plaintiff amended the complaint and filed a motion to remand on the basis that the new complaint did not have an ERISA cause of action, and therefore the court lacked jurisdiction.  *Id.* at 454.  On appeal, the Eleventh Circuit held that a district court must assess jurisdiction at the time of removal, and should not consider an amended complaint filed post-removal.  *Id.* at 455.  The court therefore found that the removal to federal court was proper and that the district court had federal question jurisdiction. *Id.* at 458.

Plaintiff acknowledges "the case law[,] which stands for the proposition that a plaintiff may generally not amend its complaint to avoid removal," but claims that "a party certainly can amend its complaint to allege the necessary elements to establish exceptions to removal, especially when the Plaintiff did not have a chance to amend his pleading in state court and further has the undisputed right to timely amend [sic] pursuant to Fed. R. Civ. P. 15(a)(1)(B)." [D.E. 16 at p. 2.]  Plaintiff does not cite a single Eleventh Circuit or Florida District Court case to support his argument.  Rather, he cites to one case from the Ninth Circuit: *Benko v. Quality Loan Service Corp.*, 789 F.3d 1111 (9th Cir. 2015).  But the court in *Benko* merely held that the plaintiff was permitted to amend its complaint post-removal in order to add clarifying information relating to CAFA exceptions.  *Id.* at 115, 117.  It said nothing about amending a removed complaint to re-define the class, which is what Plaintiff does here.  Nor is there any precedent in the Eleventh Circuit for any exception to the requirement that on remand, a Court must consider the Complaint that was removed.

More importantly, Plaintiff fails to inform the Court that subsequent to the Ninth Circuit's *Benko* decision, the Ninth Circuit issued a decision in *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274 (9th Cir. 2017), which specifically notes the limited holding of *Benko* and directly

undercuts Plaintiff's argument that his revised class definition should be considered by the Court for purposes of his Motion to Remand.[5]

In *Broadway Grill, Inc.*, the Ninth Circuit clarified its *Benko* decision and explained that post-removal amendment is **only permitted** "to provide some amplification for federal jurisdictional purposes of the nature of plaintiffs' allegations."  856 F.3d at 1277.  The plaintiff in *Broadway Grill* attempted to do exactly what Plaintiff is attempting to do here.  The class definition in the original complaint, and upon which the defendant removed the action, included both California and non-California citizens who accepted Visa-branded credit cards in California.  Following removal, the plaintiff amended the complaint and narrowed the class to only include "California citizens" attempting to eliminate minimal diversity.  *Id.* at 1276. *Broadway Grill* rejected the notion that a plaintiff could alter "the definition of the class itself" and rejected the argument that such a class revision would be considered "a clarification" of federal jurisdiction under CAFA.  *Id.* at 1277-78; *see also id.* at 1279 ("Our decision in *Benko* did not sanction post-removal amendments that change the nature of the claims or the make up of the class.").  The Ninth Circuit therefore held that this type of amendment was impermissible.

As in *Broadway Grill*, here, the class definition in the original complaint, and upon which Defendants removed the action, included both Florida and non-Florida citizens who purchased Bombay.  Following removal, Plaintiff amended the Complaint to limit the class to only include "Florida citizens" in an attempt to eliminate minimal diversity.  [D.E. 13.]  Just as in *Broadway Grill* (and just as the Eleventh Circuit holds), this is impermissible.  CAFA jurisdiction must be determined based on the original complaint that Defendants removed to this Court.

---

[5] Westlaw labels the *Benko* decision with a "yellow" flag, which indicates that other cases cite *Benko* negatively.  A simple click on the Westlaw "citing references" tab provides a list of all cases that cite *Benko*, including all negative cases.  *Broadway Grill* is second on the list, and is designated as a "negative" case that distinguishes *Benko*.

In addition to the fact that *Broadway Grill* distinguishes *Benko* and rejects the exact argument Plaintiff makes here, the binding Eleventh Circuit case law set forth above, as well as every other Circuit to address the issue, states that a court cannot look to a post-removal amendment for considering whether remand is proper.[6] *See, e.g.*, *Hargett v. RevClaims, LLC*, 854 F.3d 962, 967 (8th Cir. 2017) (refusing to consider plaintiff's post-removal amended complaint, stating that "the concept of redefining a class to trigger the local-controversy exception" violates CAFA); *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) ("[B]ecause jurisdictional facts are assessed at the time of removal and because at the time the complaint here appeared to plead in good faith the class claim necessary for jurisdiction, the fact that the [district] court subsequently determined that the case could not proceed as a class action under CAFA did not deprive it of subject matter jurisdiction."); *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 426 (5th Cir. 2014) ("[A]pplication of the local controversy exception depends on the pleadings at the time the class action is removed, not on an amended complaint filed after removal"); *Louisiana v. Amer. Nat. Prop. Cas. Co.*, 746 F.3d 633, 639 F.3d (5th Cir. 2014) ("Every circuit that has addressed the question has held that post-removal amendments do not oust CAFA jurisdiction."); *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380-81 (7th Cir. 2010) ("[J]urisdiction under CAFA is secure even though, after removal, the plaintiffs amended their complaint to eliminate class allegations . . . [as] allowing plaintiffs to amend away CAFA jurisdiction after removal would present a significant risk of forum manipulation.").

---

[6] In addition, CAFA itself provides that courts are to address the question of "citizenship" based on the "date of the filing of the complaint." *See* 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined . . . as of the date of the filing of the complaint or amended complaint . . . indicating the existence of Federal jurisdiction.").

Accordingly, Plaintiff's Motion to Remand must be based on the original Complaint, which defines the class to include both citizens and non-citizens of Florida, including citizens of foreign countries.  Compl. ¶ 1.

## C. Plaintiff's Motion To Remand Is Untimely

Plaintiff's Motion to Remand should be summarily denied as untimely.  28 U.S.C. § 1447(c) reads, in relevant part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Thus, the text encompasses two types of remands: (1) those following a timely motion that are based on a defect other than lack of subject matter jurisdiction, and (2) those, whether motion-motivated or not, that are based on the lack of subject matter jurisdiction.  *Hunter v. City of Montgomery, Alabama*, 859 F.3d 1329, 1333 (11th Cir. 2017).  The first type of remand—a motion based on a defect other than lack of subject matter jurisdiction—must be made within 30 days of the filing of the notice of removal.

In *Hunter*, the Eleventh Circuit explained that a motion to remand based on CAFA exceptions, filed more than 30 days after removal, is untimely.  859 F.3d at 1334.  The court explained that CAFA's exceptions do not affect "the existence of subject matter jurisdiction" but rather, CAFA's "text recognizes that the court has jurisdiction but prevents the court from exercising it if either exception applies."  *Id.* at 1334.  Accordingly, a motion to remand based on any CAFA exception falls into the first category of motions to remand—one that is based on a defect other than lack of subject matter—and is subject to the 30-day deadline. *Id.*; *see also, e.g.*, *Colomar v. Mercy Hosp. Inc*., No. 05-22409, 2007 WL 2083562, at *3, n.2 (S.D. Fla. July 20, 2007) (noting that a motion to remand based on the home state exception would have been

untimely because remand pursuant to a CAFA exception is considered something "other than lack subject matter jurisdiction" and therefore must be filed within 30 days of removal).

Here, Plaintiff acknowledges in his Motion to Remand that it is based on CAFA's exceptions. *See, e.g.*, Mot. at p. 2 ("Under the plain language of CAFA, the "home state" controversy and "local controversy" exceptions apply to this case and therefore this case must be remanded to the Miami-Dade Circuit Court."). Therefore, Plaintiff was required to file the Remand Motion within 30 days after Defendants filed their Notice of Removal. Defendants filed and served Plaintiff with the Notice of Removal on September 16, 2019 [D.E. 1.] Plaintiff was therefore required to file his Motion to Remand by October 16, 2019. Nevertheless, Plaintiff did not file his Motion until October 23, 2019. Because Plaintiff's Motion was late, it must be denied on that basis alone. *See, e.g.*, *Whitfield v. Miami-Dade County Police Dept.*, 535 F. App'x 772, 774 (11th Cir. 2013) (holding that lower court should have denied the motion to remand because it was untimely).

**D.  <u>The CAFA Exceptions Are Not Applicable To Plaintiff's Complaint</u>**

Plaintiff's Remand Motion should also be denied because Plaintiff has not established that any of the CAFA exceptions apply to his Complaint. Plaintiff bears the burden of proving, by a preponderance of the evidence that a statutory exception to CAFA applies. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006). In deciding CAFA's jurisdictional requirements, there is no longer a presumption in favor of remand. *Dart v. Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014);[7] *Dudley*, 778 F.3d at 912. CAFA's

---

[7] In *Dart*, the Supreme Court made clear that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." 135 S. Ct. at 554. This conclusion was driven in part, by the legislative history, including the Senate Report, which observed that CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly

"language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the [exceptions] to be [narrow], with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Evans*, 449 F.3d at 1163-64 (quoting S. Rep. No. 109–14, at 42 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 40).

### 1. The Local Controversy And Home State Exceptions Do Not Apply

The narrow local controversy exception aims to keep in state court "a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others." *Evans*, 449 F.3d at 1164 (citation omitted). Under the local controversy exception, a district court shall remand when: 1) more than two-thirds of the class members are "Florida citizens;" 2) at least one defendant is a defendant from whom "significant relief" is sought and whose conduct forms a "significant basis" for the claims made by plaintiffs is a Florida citizen; 3) the principal injuries resulting from the alleged conduct of the defendant happened in Florida; and 4) no other similar class action has been filed against defendants during the preceding three years. 28 U.S.C. §1332(d)(4). The home state exception provides that "[a] district court shall decline to exercise jurisdiction" over a class action in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. §1332(d)(4)(B).

In the context of diversity jurisdiction, citizenship is equivalent to domicile, which requires both *physical presence* (the place where a person lives) **and** an *intention to remain indefinitely*. *McCormick v. Aherholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (citations omitted). Citizenship is therefore "the place of his true, fixed and permanent home and principal

---

removed by any defendant." *Id.* The Eleventh Circuit has accordingly held that courts may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions. *Dudley*, 778 F.3d at 912.

establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick*, 293 F.3d at 1257-58 (internal quotation omitted).  Importantly, there is a difference between the place where a person lives and citizenship.  The latter requires both physical presence as well as an intent to remain indefinitely.  This difference is important and is discussed throughout the remainder of this Response.

Plaintiff acknowledges that "citizenship" is the standard. [Mot. at 5.]  The typical evidence used to show intent to remain includes voter or vehicle registration, driver's license, employment records, utility and phone bills, tax returns, banking statements, business or property ownership, and sworn statements of intent.  *See*, *e.g.*, *Sunseri v. Macro Cellular Partners, Ltd.*, 412 F.3d 1247, 1249 (11th Cir. 2005).  None are provided here, or even alleged.

In order to qualify for either the local controversy exception or the home state exception, Plaintiff would need to prove by a preponderance of the evidence that 2/3 of the putative class in the original Complaint are citizens of Florida—that is, 2/3 of the purchasers of Bombay identified in the original Complaint's class definition live in Florida and intend to remain in Florida.[8]  As explained above, the Court cannot consider Plaintiff's revised class definition in the Amended Complaint.

The original Complaint defines the class to include both Florida and non-Florida citizens, and citizens of foreign countries—literally anyone who purchased Bombay in Florida.  In other words, the class includes, for example: (1) any visitor, tourist, or vacationer who lives outside of Florida, who purchased Bombay while temporarily in Florida; (2) any business person who lives outside of Florida, who purchased Bombay while temporarily in Florida for a conference or business meeting; (3) individuals who are not citizens of Florida, but who purchased Bombay

---

[8] Plaintiff's Complaint defines the class as "all persons in the State of Florida who have purchased Bombay Sapphire gin."  (Compl. ¶ 1.)

while spending time in a second home or apartment that they own or rent in Florida ("snowbirds"); (4) individuals who were in transition to a cruise line or through an airport, or some other destination, and purchased Bombay while temporarily in Florida; (5) individuals who live in Florida, but intend to move somewhere else; and (6) literally anyone who crossed the border into Florida at any time in the last four years.  Yet, Plaintiff's Motion to Remand is improperly directed only at the Amended Complaint, not the original Complaint.  While the Motion attempts to discuss the issue of "intent to remain" in Florida, it provides absolutely no evidence that 2/3 of the purchasers of Bombay (as defined in the original Complaint) actually lived in Florida, as permanent residents with an intent to remain when they purchased the product.[9]

As Expert Robert D. Sands affirms in his Declaration, attached as Exhibit B ("Sands Declaration")[10]:

- "[F]or 2015 – 2018, and for 2019 H1, the estimates of number of visitors to Florida include: 106.6 million, 112.2 million, 118.4 million, 127.0 million, and 69.7 million (partial year statistics) persons, respectively; those estimates are both "credible and defensible" according to the Tourism Economics review, and in my expert opinion. These high-quality Florida visitor numbers, when compared with the mover data from the American Community Survey Questionnaire cited by the Plaintiff, clearly indicates that there is no data that supports the conclusion that 1/3 or 2/3 of the purchasers of Bombay Sapphire gin are solely Florida citizens." *See* Sands Decl. ¶ 8.

---

[9] Because Plaintiff's Motion to Remand is directed at the amended class definition, he relies only on the Amended Complaint's class definition to establish that "every member of the proposed class can only be a Florida citizen . . . for purposes of diversity as the class is defined and only is comprised of Florida citizens who purchased Bombay Sapphire gin in Florida."  [Mot. at p. 5-6.]

[10] Robert Sands is a United States Census Expert, who was employed by the U. S. Census Bureau from 1984-2014.  For 8 years, he was a Mathematical Statistician for the U.S. Census Bureau, and prior to that, he worked as a Systems Programmer in the Economics and Demographic Statistical Methods Divisions and System Support Division at the U.S. Census Bureau.  He has in-depth experience with census sampling and estimation techniques.  *See* Sands Decl. ¶ 1.

- "Plaintiff's proposed census data . . . includes all ages of individuals, when Bombay Sapphire gin can only be purchased by adults 21 and over.  Florida's population is approximately 21.3 million people of all ages one year and above, but Florida's population of individuals 21 and over is only approximately 16.3 million people."  *Id.* ¶ 10.

- "Based on 2018 as an example, there are accordingly approximately 6 times as many visitors as Florida citizens (permanent residents) of all ages, and 7.8 times as many "adult" visitors.  These statistics show that Bombay Sapphire gin is many more times likely sold to a visitor than a Florida citizen (permanent resident)."  *Id.* at ¶ 11.

- "To establish the demographic class Plaintiff seeks, he must not only show a certain person purchased Bombay Sapphire gin in Florida, but he must also offer evidence that the purchaser was a citizen of Florida.  According to the data I reviewed from reliable sources, it would be impossible to tell if the purchaser of Bombay Sapphire gin in Florida was a citizen or visitor.  Certainly nothing the Plaintiff has asserted provides that information. Plaintiff's proffered evidence, that merely attempts to show the data for "Different state of residence 1 year ago," has no relevance to whether the individuals who purchase Bombay Sapphire gin in Florida in any given year, constitute at least 1/3 or 2/3 of Florida citizens, when considering all of the visitors Florida receives and the age limitations in purchasing this product.  Plaintiff's data also has no relevance to the amount of persons who purchase Bombay Sapphire gin in Florida, because it constitutes data for all people age 1 and over, when purchasers of Bombay must be over the age of 21. Further, Plaintiff's "Different state of residence 1 year ago" data is incomplete because (i) it covers only 2017, not 2015-2019; (ii) it excludes the Alabama portion of data; (iii) it only presents 4 of the 26 pages of information; and (iv) it does not provide the total numbers for all of the "Different state of residence 1 year ago" data. Plaintiff has not provided any data that could establish that 1/3 or 2/3 of all purchasers of Bombay Sapphire gin in Florida are Florida citizens.  Based on the data and my experience and expertise in demographics and census data, it is my opinion that Plaintiff cannot establish that the purchasers of Bombay Sapphire gin in Florida are either 1/3 or 2/3 Florida citizens.  I find it extremely unlikely that Plaintiff could meet this burden of limiting the proposed class in this way."  *Id.* at ¶¶ 13-19.

In any event, the "census data" that Plaintiff filed does not and cannot establish that 1/3 or 2/3 of the purchasers were citizens of Florida at the time of purchase because the visitors to Florida dwarf the number of people who live in Florida.  These Florida visitor numbers when juxtaposed with the official Census Bureau (permanent) resident and mover data, cited by the Plaintiff, clearly indicate that there is no data that supports the conclusion that 1/3 or 2/3 of the

purchasers of Bombay Sapphire gin live in Florida, let alone are citizens of Florida.  *See* Sands Decl. ¶ 8.

As Sands explains in his declaration, there are almost 6 times as many visitors as Florida residents of all ages, and 7.8 times as many "adult" visitors as residents (Bombay Sapphire gin can only be purchased by adults).  Bombay Sapphire gin can be acquired in a number of ways, including, among others: (1) at a liquor store; (2) at a bar or restaurant; (3) on a cruise ship at a Florida port; (4) at a resort; (5) at hotels and motels; or (6) given as a gift.  Given these demographics, it would be impossible to tell if the purchaser or consumer of Bombay Sapphire gin in Florida lived in Florida, was a "citizen" of Florida (i.e., intended to remain in Florida) or was a visitor (it is 7.8 times more likely that the purchaser is an adult visitor).  *See* Sands Decl. ¶¶ 12-14.

Moreover, the data Plaintiff submitted concerning "Different state of residence 1 year ago" for individuals in Florida is incomplete.  *See id.* ¶ 17.  Accordingly, Plaintiff fails to establish that 1/3 or 2/3 of purported class lived in Florida at the time of purchase, let alone were citizens of Florida at the time of purchase (*i.e.,* lived in Florida and intended to remain in Florida), and therefore neither the local controversy or home state exception applies.

### 2.  The Discretionary Exception Does Not Apply

Plaintiff also argues that the Court should remand the case based on CAFA's discretionary exception.  Pursuant to 28 U.S.C. § 1332(d)(3)(A)-(F), a court may decline jurisdiction so long as ***greater than*** 1/3 of the proposed class and the primary defendants are citizens of the State in which the action was filed and based on a number of other considerations, including (among other factors), whether the case involves matters of national

and interstate interest, whether it was brought in a forum with a distinct nexus with the class members, the alleged harm, and the defendants.

For the same reasons that Plaintiff's Motion to Remand does not establish that 2/3 of the proposed class are citizens of Florida, he similarly does not establish that 1/3 of the proposed class are citizens of Florida. *See* Sands Decl.  In addition, for the same reasons as set forth above, the case implicates people in all states, as well as around the world, and therefore does not have a sufficient nexus with Florida to fall within CAFA's discretionary exception.

### E.  The CAFA Exceptions Do Not Even Apply To The Amended Complaint

Although the law is explicitly clear that on a Motion to Remand the Court can only consider the Plaintiff's original Complaint, even if the Court were to consider the Amended Complaint, Plaintiff cannot meet his burden of proving that at least 2/3 of the class intended to stay in Florida.  Relying only on the Amended Complaint, Plaintiff merely assumes that "every citizen of Florida is a consumer of Bombay Sapphire gin" and thus at least 2/3 of those purchasers are Florida citizens.   [Mot. at 8.]   Plaintiff provides no factual basis for this assumption.  First, not every Florida citizen is over the age of 21.  Second, not every Florida citizen drinks Bombay Sapphire gin.  Thus, Plaintiff's assumption is legally and factually defective.

### 1.  Plaintiff's Census Data Does Not Support Any CAFA Exception

The data Plaintiff cites has nothing whatsoever to do with the citizenship of the persons who purchases Bombay in Florida.  The data merely reflects all people over the age of 1 who moved to Florida in 2017, as well as the total Florida population age 1 and over in 2017.  [Mot. at 7-8.]  This has nothing to do with (i) consumers over the age of 21 who can actually consume Bombay Sapphire gin; and (ii) consumers who actually purchase and consume Bombay Sapphire

gin (which is obviously not everyone). Accordingly, this data proves nothing and cannot support any CAFA exception.  *See* Sands Decl.  Moreover, this incomplete data: (i) covers only 2017, not 2015-2019; (i) excludes Alabama; (iii) only presents 4 of the 26 pages of information; and (iv) does not provide the total numbers for all the "Different state of residence 1 year ago" data. *See id*. ¶ 17.

### 2.   No Known Data Exists Showing Whether A Purchaser of Bombay Is A Florida Citizen or Non-Florida Citizen

Plaintiff has provided no reliable data that shows whether a purchaser of Bombay Sapphire gin at a liquor store, grocery store, restaurant, or bar is a Florida citizen or not.  Plaintiff has not alleged or demonstrated any ability to ascertain the citizenship of the putative class members, either based on the original Complaint or the Amended Complaint.  Quite to the contrary, when an individual purchases Bombay Sapphire gin at a restaurant or bar in Florida, the bars do not keep track of who does or does not live in Florida – let alone, who is and is not a Florida citizen (*i.e.,* whether that person lives in Florida *and* intends to remain in Florida). Similarly, when an individual purchases Bombay Sapphire gin at a liquor store or grocery store in Florida, the stores do not keep track of whether that person is a permanent resident of Florida, and if so, whether that person intends to remain in Florida (and therefore is a Florida citizen). Even if records of sales are kept (which the Plaintiff has not demonstrated), there is no allegation, much less evidence, that such sales records would reflect where the purchaser lives and  intends to remain in Florida.[11]  *See* Sands Decl.

---

[11] Even a Florida driver's license is not conclusive proof of residency because it is common for people who move to other states to keep their Florida licenses for a variety of reasons, including that they do not drive.  Many people with Florida licenses who live elsewhere do not own a car, particularly those who live in large cities.  Many people with Florida licenses who live elsewhere choose to use ride sharing services, buses, trains, etc., in lieu of owning a car and driving.  Many people with Florida licenses are infirm or elderly and do not drive.  Many people with Florida

### 3. The Injunctive Relief Sought In The Amended Complaint Affects Non-Florida Citizens and Citizens of Foreign Countries

Although Plaintiff's revised class definition in the Amended Complaint purports to limit the putative class to Bombay Sapphire gin purchasers who are Florida "citizens," the persons affected by the challenged conduct, and for whom Plaintiff necessarily seeks affirmative relief, are not limited to persons within the class definition. This is because the Amended Complaint requests injunctive relief, prohibiting BUSA from "adulterating" Bombay Sapphire gin with "grains of paradise," a staple ingredient of the product. Am. Compl. ¶ 58. Plaintiff, in essence, asks this Court to enjoin BUSA from producing Bombay Sapphire gin, a product sold around the world, not just in Florida, impacting non-parties who purchase and consume Bombay Sapphire gin outside Florida.

Apparently, Plaintiff is attempting to proceed in the role of an attorney general, by seeking to misguidedly enforce a criminal statute, in order to protect and obtain relief, not just for himself and the putative class, but also for non-parties, including all purchasers of Bombay Sapphire gin world-wide. When a suit is brought on behalf of real parties in interest, they are treated as class plaintiffs for CAFA jurisdictional purposes, even if they are not named parties or alleged members of a Federal Rule of Civil Procedure 23 class. "Courts routinely look beyond labels to determine whether a lawsuit is a 'class action' or 'mass action' under the Class Action Fairness Act." *AT&T Mobility LLC v. Bushman*, No. 11-cv-80922-KLR, 2011 WL 5924666, *2

---

licenses who live elsewhere cannot afford a car or do not need one, for innumerable other reasons.

(S.D. Fla. Sept. 23, 2011) (citing *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir. 2008); *McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 453–54 (E.D. Pa. 2010)).

The Eleventh Circuit has ruled on this exact issue.  In *Schwartz v. SCI Funeral Servs. of Florida*, plaintiffs sued a funeral home alleging that their deceased relatives received improper burial services in Florida. 931 F. Supp. 2d 1191, 1192 (S.D. Fla. 2013), *aff'd* 554 F. App'x 823 (11th Cir. 2014).  The "[p]laintiffs' class definition purport[ed] to limit the putative class to purchasers at the cemetery and family members of those buried at the cemetery who [were] 'Florida citizens,'" even though citizens of other states had suffered the same harms.  931 F. Supp. 2d at 1196.  The district court concluded that these non-citizens, "including owners of burial rights, [and] family members of interred decedents," were "real parties in interest" because they would be affected by the injunctive relief the plaintiffs had requested, such as disclosure of the problems at the cemetery, and an injunction against the funeral home's purportedly unlawful acts.  *Id.* at 1197.  The court explained that it was necessary to "look beyond labels" to determine whether federal jurisdiction exists under CAFA.  *Id.*  "When a suit is brought on behalf of real parties in interest," the court held, "they are treated as class plaintiffs for purpose of CAFA jurisdiction even if they are not named parties or alleged members of a Rule 23 class."  *Id.*  The Eleventh Circuit affirmed the decision "for the reasons the District Court gave."  554 F. App'x at 823.

Similarly, in *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir. 2008), the attorney general brought an action in his own name to recover for harm to the consuming public in the nature of inflated insurance premiums and unfair insurance claim payments.  Despite that the case was not styled as a class action and was brought in the name of an individual, the court held that the case was properly removed under CAFA.  The *Caldwell*

court first held that the fact that the case was not styled as a class action was irrelevant under CAFA. "It is well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach." *Id*. at 424. The court determined that the real parties in interest were affected insurance policy holders despite that they were not named plaintiffs. This holding is consistent with the congressional intent to create broad-based jurisdiction under CAFA.

> In passing CAFA, Congress emphasized that the term "class action" should be defined broadly to prevent "jurisdictional gamesmanship.

536 F.3d at 424. If non-parties:

> are the real parties in interest, then the nature of the claims asserted must be examined to determine if they are removable under CAFA. Generally speaking, a party is a real party in interest when it is 'directly and personally concerned in the outcome of the litigation to the extent that his participation therein will insure 'a genuine adversary issue between the parties . . . .'

*Id*. at 428 (citations omitted).).

As Congress emphasized: "Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." S. Rep. No. 109-14 at 35 (2005), U.S. Code Cong. & Admin News 2005, at 3. Accordingly, the fact that the out-of-state real parties in interest are not included in the class definition here has no bearing on whether they comprise a "class" for purposes of finding CAFA jurisdiction over this lawsuit. The non-Florida citizenship of Bombay Sapphire gin purchasers satisfies the minimal diversity element of CAFA jurisdiction. More importantly, Plaintiff cannot establish any CAFA exception by a preponderance of the evidence.

## **CONCLUSION**

Wherefore, for the reasons stated above, the Court should deny Plaintiff's Motion to Remand.

Respectfully submitted,
HOGAN LOVELLS US LLP
600 Brickell Avenue
Suite 2700
Miami, Florida 33131
Telephone:     (305) 459-6500

By: /s/ Marty Steinberg
        Marty Steinberg
        Fla. Bar No.: 187293
        Email: marty.steinberg@hoganlovells.com
        David Massey
        Fla. Bar No.: 86129
        Email: david.massey@hoganlovells.com
        Melissa Levitt
        Fla Bar. No. 55431
        Email: Melissa.levitt@hoganlovells.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 18, 2019 a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Marty Steinberg