United States District Court
for the
Southern District of Florida

| Uri Marrache, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-23856-Civ-Scola |
| Bacardi U.S.A., Inc. and Winn-Dixie Supermarkets, Inc., | ) |
| Defendants. | ) |

**Order on the Motion to Dismiss**

Now before the Court is the Defendants Bacardi U.S.A., Inc. and Winn-Dixie Supermarkets, Inc.'s motion to dismiss the amended complaint. For the reasons set forth below, the Court **grants** the Defendants' motion (**ECF No. 24**).

1. **Background**

Numerous class actions have greatly benefited society such as *Brown v. Board of Education*, *In re Exxon Valdez*, and *In re Agent Orange Product Liability Litigation*. This is **not** one of those class actions.

The Plaintiff Uri Marrache files this FDUTPA class action against Bacardi U.S.A., Inc. ("Bacardi") and Winn-Dixie Supermarkets, Inc. ("Winn-Dixie"), alleging that one of the products made by Bacardi and sold by Winn-Dixie, the Bombay Sapphire gin, contains a botanical the use of which is prohibited under Florida law. (ECF No. 13 at ¶¶ 11-22.) The botanical is called grains of paradise, and it is identified in a Florida Statute enacted in 1868 that criminalizes the adulteration of liquor. Fla. Stat. § 562.455. Marrache does not allege that the bottle of gin he bought containing grains of paradise caused him any health issues or other harm. He instead alleges that the product was "worthless" because it was adulterated with grains of paradise. (Id. at ¶ 47.) Marrache brings this class action complaint against Bacardi and Winn-Dixie due to his purchase of the "valueless" gin.

2. **Legal Standard**

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Federal law preempts § 562.455, Florida Statutes.

State law that conflicts with federal law is "without effect" because the Supremacy Clause of the United States' Constitution provides that the laws of the United States "shall be the supreme law of the land." *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998) (citing the U.S. Const. art. VI.). Federal law may preempt state law in three ways: (1) "Congress may withdraw specified powers from the states by enacting a statute containing an express preemption provision;" (2) where Congress has determined that a certain field "must be regulated by [Congress's] exclusive guidance," states are precluded from regulating conduct; and (3) state laws "are preempted when they conflict with federal law." *Arizona v. United States*, 132 S. Ct. 2492, 2500–01 (2012). No matter the type of preemption, "the purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (internal quotations omitted). This case presents a question of conflict preemption, specifically whether the Plaintiff's state claims are barred under that doctrine. (ECF No. 24 at 18-24.)

Conflict preemption arises where "(1) compliance with both federal and state regulations is a physical impossibility, or (2) the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 936 (11th Cir. 2013) (internal quotation marks omitted). The Plaintiff's claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FFDCA") and the Federal Drug Administration's ("FDA") regulations because they conflict with § 562.455, Florida Statutes. Section 562.455, the Florida statute prohibiting the adulteration of a liquor product with grains of paradise, frustrates the purposes and objectives of the FFDCA and its implementing FDA regulations, which establish that grains of paradise is generally regarded as safe. Fla. Stat. § 562.455; 21 U.S.C. § 321; 21 C.F.R. § 182.10.

The Food Additives Amendment of 1958 amended the FFDCA to grant the FDA broad regulatory authority to monitor and control the introduction of "food

additives" in interstate commerce.[1] *See* 21 U.S.C. § 348. The goal of the Amendment is two-fold: (1) "to protect the health of consumers by requiring manufacturers of food additives and food processors to pretest any potentially unsafe substances which are to be added to food" and (2) "to advance food technology by permitting the use of food additives at safe levels." Cong. Rec. 17413 (daily ed. Aug. 13, 1958). The legislative report accompanying the bill further indicates that Congress sought to prevent rules that unnecessarily prohibit access to safe food additives. *See* S. Rep. No. 2422, at 2 (1958). Specifically, the report states:

> [the Amendment] seeks to prevent rules that unnecessarily proscribe the use of additives that could enable the housewife to safely keep food longer, the processor to make it more tasteful and appetizing, and the Nation to make us of advances in technology calculated to increase and improve our food supplies.

*Id*. The Florida statue, which outlaws adulterating liquor with grains of paradise, frustrates this purpose. The FFDCA seeks to advance food technology by allowing the use of safe food additives, and the antiquated Florida statute prohibits the use of an additive that has been found to be generally regarded as safe by the FDA.

The Plaintiff argues that his claims are not preempted because the Twenty-First Amendment grants states the right to regulate liquor. (ECF No. 33 at 19.) The Plaintiff's argument is mistaken. The Supreme Court has stated that "the Twenty-first Amendment does not in any way diminish the force of the Supremacy Clause." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996). Therefore, the Twenty-First Amendment does not meaningfully change the preemption analysis here. Moreover, this case is comparable to recent court decisions finding state law claims stemming from the use of partially hydrogenated oils ("PHOs") in food were preempted because they conflicted with the FFDCA, which deemed PHOs to be safe. *See, e.g., Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 875 (N.D. Cal. 2019); *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 954 (N.D. Cal. 2019).

### 4. Marrache failed to state a claim for FDUTPA.

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. 501.204(1). "There are three elements of a FDUTPA

---

[1] Under the FFDCA, "food" is defined as "articles used for food or drink," and it includes alcoholic beverages. 21 U.S.C. § 321(f).

claim for damages: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012) (King, J.) (citing *City First Mortg. Corp.l v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). Actual damages under FDUTPA must "directly flow from the alleged deceptive act of unfair practice." *Id.* at 1361. "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or the compensation for subjective feelings of disappointment." *Id.* Here, Marrache has not sufficiently alleged any actual damages resulting from the purported unfair or deceptive act, *i.e.* the sale of gin containing Grains of Paradise in violation of § 562.455.

Actual damages are generally measured by subtracting the "difference in market value of the product in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Reilly v. Chipotle Mexican Grill, Inc.*, 711 Fed. App'x 525, 529 (11th Cir. 2017). Marrache's complaint makes no such allegations. Instead, it states that class members were injured by purchasing an "illegal product which is worthless." (ECF No. 13 at ¶¶ 47, 54.) Theoretically, allegations that the products at issue are rendered valueless as a result of a defect could support a FDUTPA claim. *See Gastaldi v. Sunvest Resort Communities, LC*, 709 F. Supp. 2d 1299, 1306 (S.D. Fla. 2010) (Altonaga, J.) ("a notable exception to the rule [on how to measure actual damages in a FDUTPA claim] may exist when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages.") (Altonaga, J.). However, Marrache does not set forth allegations explaining how the product could have been worthless. He does not allege that he could not or did not drink the gin. He does not allege that he sought a refund or a partial refund or that he complained about the gin at the time of purchase or of consumption. Moreover, Marrache's complaint notably does not allege that he suffered any side effect, health issue, or harm resulting from the grains of paradise. He does not allege that the resale value of the gin depreciated. Instead, he simply alleges that the gin is worthless.

The parties cite to *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084-85 (11th Cir. 2019), which holds that the plaintiff suffered concrete injury and thus has standing to bring this claim. (ECF No. 33 at 14-16.) Although the Defendants do not argue that Marrache lacks standing and instead argue that he failed to sufficiently state the damages element of the FDUTPA claim, some of the reasoning in *Debarnardis* is admittedly analogous to this case. The Eleventh Circuit states, "we accept, at least at the motion to dismiss stage, that a dietary supplement that is deemed adulterated and cannot lawfully be sold has no value." *Id.* at 1085. This reasoning seemingly supports Marrache's allegation that the gin he bought was worthless because it was allegedly adulterated with grains of paradise in violation of § 562.455. However, here, the Florida Statute

criminalizing the adulteration of any liquor with grains of paradise is preempted by the FFDCA and the FDA's regulations deeming the additive to be generally recognized as safe. It is not illegal to sell gin adulterated with grains of paradise, and therefore, unlike the supplements in *Debernardis*, the gin is not worthless.

### 4. Marrache failed to state a claim for unjust enrichment.

Likewise, Marrache's claim for unjust enrichment fails. Marrache alleges that the Defendants received and retained wrongful benefits from his purchase of the "valueless" gin. But, as described above, the Florida Statute criminalizing the adulteration of gin with grains of paradise is preempted by federal law; it is not illegal to sell gin adulterated with grains of paradise; and the gin is not worthless. Here, the Defendants were not unjustly enriched because they sold a bottle of gin in exchange for money. *See Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (A claim for unjust enrichment is an equitable claim "where it is deemed unjust for one party to have received a benefit without having to pay compensation for it").

### 5. Conclusion

For the reasons stated above, the Court **grants** the Defendants motion to dismiss (**ECF No. 24**) with prejudice. Because Marrache has already amended his complaint and because the Florida Statute prohibiting the adulteration of the gin with grains of paradise is preempted, repleading would be futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004) (holding that a court's denial of leave to amend is proper when the amended complaint would be futile).

**Done and ordered** at Miami, Florida, on January 28, 2020.

_____
Robert N. Scola, Jr.
United States District Judge