**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY_____AP_____D.C.

Dec 7, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 07, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  20-10677-DD
Case Style: Uri Marrache v. Bacardi U.S.A., Inc., et al
District Court Docket No: 1:19-cv-23856-RNS

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 20-10677

_____

URI MARRACHE,
individually and on behalf of all others similarly situated,

Plaintiff-Appellant,

*versus*

BACARDI U.S.A., INC.,
a Delaware corporation,
d.b.a. The Bombay Spirits Company U.S.A.,
WINN-DIXIE SUPERMARKETS, INC.,
d.b.a. Winn Dixie Liquors,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-23856-RNS

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: November 8, 2021

For the Court: DAVID J. SMITH, Clerk of Court

[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 20-10677

_____

URI MARRACHE,
individually and on behalf of all others similarly situated,

Plaintiff-Appellant,

*versus*

BACARDI U.S.A., INC.,
a Delaware corporation,
d.b.a. The Bombay Spirits Company U.S.A.,
WINN-DIXIE SUPERMARKETS, INC.,
d.b.a. Winn Dixie Liquors,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:19-cv-23856-RNS

———————————

Before WILSON, LAGOA, and BRASHER, Circuit Judges.

LAGOA, Circuit Judge:

Uri Marrache appeals the district court's order dismissing his amended class action complaint against Bacardi U.S.A., Inc., and Winn-Dixie Supermarkets, Inc. (collectively, "Defendants"). Marrache asserted claims against Defendants under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and for unjust enrichment based on the purchase of Bombay Sapphire Gin containing grains of paradise by Marrache and the other class members. Marrache claimed that the inclusion of grains of paradise in Bombay Sapphire Gin was in violation of Florida Statute § 562.455.

This appeal asks us to resolve four issues: (1) whether section 562.455 is preempted by federal law, i.e., the Food Additives Amendment of 1958 (the "Food Additives Amendment"), Pub. L. 85-929, 72 Stat. 1784 (1958), which amended the Federal Food, Drug, and Cosmetic Act ("FFDCA"), and its implementing regulations; (2) whether Marrache failed to state claims under FDUTPA against Defendants; (3) whether Marrache failed to state claims for

unjust enrichment against Defendants; and (4) whether the district court abused its discretion in dismissing the amended complaint with prejudice.  While we conclude that section 562.455 is not preempted by the Food Additives Amendment to the FFDCA, we nonetheless affirm the district court's order dismissing Marrache's amended class action complaint with prejudice.  First, Marrache's FDUTPA claims are barred by FDUTPA's safe harbor provision, which exempts acts or practices required or specifically permitted by federal or state law.  *See* Fla. Stat. § 501.212.  Second, even if the FDUTPA claims did not fall under FDUTPA's safe harbor provision, Marrache failed to state a plausible claim for actual damages under FDUTPA and thus dismissal was also proper on this ground.  We further affirm the district court's dismissal of Marrache's claims for unjust enrichment and conclude that the district court did not abuse its discretion in dismissing the amended complaint with prejudice as any attempt to amend would be futile.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Bacardi produces Bombay Sapphire Gin ("Bombay"), and Winn-Dixie sells Bombay in its stores.  According to Bombay's marketing and labeling, the gin contains ten "hand-selected botanicals from exotic locations around the world."  One of those botanical ingredients is a substance known as "grains of paradise," the inclusion of which is "prominently etched on each of [Bombay's] distinctive blue bottles."

Marrache filed a class action complaint against Defendants in Florida state court "on behalf of all persons in the State of Florida

who have purchased Bombay." Marrache asserted claims against Defendants under FDUTPA and for unjust enrichment based on the fact that he and the other class members had purchased Bombay containing grains of paradise, which he claimed was in violation of Florida Statute § 562.455. Bacardi, with Winn-Dixie's consent, timely removed Marrache's action to federal court pursuant to the Class Action Fairness Act. Defendants then moved to dismiss the complaint.

Before the district court ruled on Defendants' motion to dismiss, Marrache filed an amended complaint, which modified the proposed class to "all citizens of the State of Florida . . . . who are consumers of Bombay . . . in the State of Florida." Marrache again alleged that Bacardi added grains of paradise to Bombay—as indicated by the labeling on Bombay's bottles—in violation of section 526.455. Marrache also alleged that "Winn-Dixie knowingly sold [Bombay]" to him and the other class members in Florida, that he and the other class members "purchased and consumed [Bombay] in Florida" and that, as a result, they were damaged. Marrache asserted claims under FDUTPA for damages and for declaratory and injunctive relief, *see* Fla. Stat. § 501.211, alleging that Defendants had "engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade or commerce" by adulterating Bombay with grains of paradise and then knowingly selling it to Marrache and the other class members in violation of Florida Statute § 562.455 and Florida Statute §§ 500.04(1)–(3). Marrache also asserted a claim

for unjust enrichment, alleging that he and the other class members "conferred direct benefits to Defendants by purchasing Bombay" from Defendants at Winn-Dixie's stores, that Defendants appreciated those conferred benefits "by virtue of [their] retention of the money paid for the Bombay," and that it would be inequitable for Defendants to retain those benefits as they had sold an illegal product to them.

Defendants moved to dismiss the amended complaint, arguing that Marrache failed to allege facts reflecting how grains of paradise adulterated Bombay or demonstrating deceptive acts by Defendants, specifically noting that the inclusion of grains of paradise in Bombay was etched on Bombay's bottles. Defendants also argued that Marrache failed to allege FDUTPA violations, including failing to adequately allege causation and actual damages, and that Marrache's claims fell within FDUTPA's safe harbor provision, which exempts acts or practices required or specifically permitted by federal or state law. *See* Fla. Stat. § 501.212. Defendants further argued that Marrache failed to state a claim for unjust enrichment. Additionally, Defendants contended that the Food Additives Amendment, which amended the FFDCA, preempted section 562.455, as the Food and Drug Administration ("FDA"), pursuant to the rule-making authority delegated to it by Congress under the Food Additives Amendment, had expressly identified grains of paradise as a substance "generally recognized as safe" ("GRAS") in 21 C.F.R. § 182.10. As such, Defendants argued that because federal

and state law conflicted, section 562.455 was preempted by federal law.  Marrache opposed Defendants' motion to dismiss.[1]

In its order granting Defendants' motion to dismiss, the district court found that the Food Additives Amendment preempted Florida Statute § 562.455.  The district court considered the Food Additives Amendment's legislative history and explained that section 562.455 frustrated the FFDCA's purpose because the federal statute "seeks to advance food technology by allowing the use of safe food additives, and the antiquated Florida statute prohibits the use of an additive that has been found to be generally regarded as safe by the FDA."

Additionally, the district court found that Marrache failed to state a FDUTPA claim because he had not "sufficiently alleged any actual damages resulting from the purported unfair or deceptive act"—the sale of Bombay produced with grains of paradise.  The district court explained that Marrache's amended complaint made no allegations of actual damages, but rather, alleged that he and the other class members were injured by purchasing an illegal product—Bombay produced with grains of paradise—that he claimed was worthless.  The district court, however, noted that Marrache did not explain how the product could be worthless, as he did not allege that (1) he could not or did not drink the gin, (2) he sought a refund of or complained about the Bombay at the time of purchase

---

[1] Marrache also moved to remand the case back to state court.  The district court denied Marrache's motion as untimely under 26 U.S.C. § 1447(c).

or consumption, or (3) he suffered any side effect, health issue, or harm from the grains of paradise in Bombay. The district court also addressed *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084–85 (11th Cir. 2019), in which this Court, when analyzing whether the plaintiffs had alleged a concrete injury for purposes of standing, stated that "at the motion to dismiss stage, . . . a dietary supplement that is deemed adulterated and cannot lawfully be sold has no value." While explaining this reasoning "seemingly" supported Marrache's allegation that the Bombay was worthless because it was allegedly adulterated with grains of paradise, the district court explained that because the Florida statute criminalizing the adulteration of alcohol with grains of paradise was preempted by federal law, the Bombay was not worthless. The district court also found Marrache's unjust enrichment claim failed because Defendants were not unjustly enriched when they sold a legal bottle of gin in exchange for money. The district court dismissed Marrache's amended complaint with prejudice, as Marrache had already amended his complaint once and any "repleading would be futile." This timely appeal ensued.

## II.    STANDARDS OF REVIEW

We review a district court's grant of a motion to dismiss with prejudice *de novo*, "accepting the [factual] allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1275 (11th Cir. 2015) (alteration in original) (quoting *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008)); *accord*

*Cromartie v. Shealy*, 941 F.3d 1244, 1251 (11th Cir. 2019).  Additionally, whether federal law preempts a state law claim is a question we review *de novo*.  *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1181 (11th Cir. 2017).

Generally, a district court's decision to deny a motion to amend a complaint is reviewed for an abuse of discretion.  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004).  But "we will review *de novo* an order denying leave to amend on the grounds of futility, because it is a conclusion of law that an amended complaint would necessarily fail."  *City of Miami*, 801 F.3d at 1275.

## III.    ANALYSIS

On appeal, Marrache contends that the district court erred for several reasons.  First, Marrache argues that the district court erred in finding that the Food Additives Amendment to the FFDCA preempted section 562.455, Florida Statutes.  Next, he argues that the district court erred in finding that he failed to state claims under FDUTPA and for unjust enrichment against Defendants.  Finally, he contends that even if the district court properly dismissed his amended complaint, the district court abused its discretion in dismissing it with prejudice, as he should have been allowed another opportunity to amend.  We address these arguments in turn.

## A.  Whether Federal Law Preempts Florida Statute § 562.455

Marrache argues that the district court erred in determining that section 562.455 was preempted by the Food Additives Amendment to the FFDCA.  We agree.

In 1868, the Florida Legislature enacted section 562.455, which provides in relevant part:

> Whoever adulterates, for the purpose of sale, any liquor, used or intended for drink, with . . . grains of paradise, . . . or any other substance which is poisonous or injurious to health, and whoever knowingly sells any liquor so adulterated, shall be guilty of a felony of the third degree, punishable as provided in [Florida Statute] s. 775.082, s. 775.083, or s. 775.084.

Seventy years later, in 1938, Congress enacted the FFDCA.  Pub. L. No. 75-717, 52 Stat. 1040 (1938); *Flemming v. Fla. Citrus Exch.*, 358 U.S. 153, 160–61 (1958).  The FFDCA "was designed primarily to protect consumers from dangerous products," i.e., "to safeguard the consumer by applying the [FFDCA] to articles from the moment of their introduction into interstate commerce . . . to the moment of their delivery to the ultimate consumer."  *United States v. Sullivan*, 332 U.S. 689, 696 (1948); *see also* 21 U.S.C. § 393(b)(2) (explaining that the FDA shall "protect the public health by ensuring that . . . foods are safe"); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 108 (2014) ("The [F]FDCA statutory regime is designed primarily to protect the health and safety of the public at large.").

10                    Opinion of the Court                    20-10677

In 1958, Congress enacted the Food Additives Amendment to the FFDCA in order to "protect the public health by amending the [FFDCA] to prohibit the use in food of additives which have not been adequately tested to establish their safety." Pub. L. No. 85-929, 72 Stat. 1784, 1784 (1958). Under the FFDCA, the term "food" includes "articles used for food or drink for man or other animals." 21 U.S.C. § 321(f). Section 2 of the Food Additives Amendment, which is codified at 21 U.S.C. § 321(s), defines "food additive," in relevant part, as:

> any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food . . . , if such substance is not generally recognized, among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through scientific procedures (or, in the case of a substance used in food prior to January 1, 1958, through either scientific procedures or experience based on common use in food) to be safe under the conditions of its intended use.

The term "safe," as used in § 321(s), references "the health of man or animal." *Id.* § 321(u). Under section 3 of the Food Additives Amendment, which is codified at 21 U.S.C. § 342, "[a] food shall be deemed to be adulterated . . . if it is or if it bears or contains (i) any food additive that is unsafe within the meaning of [21 U.S.C. §] 348." *Id.* § 342(a)(2)(C). Section 348, in turn, provides that "[a]

food additive shall . . . be deemed to be unsafe for the purposes of the application of clause (2)(C) of section 342(a) of this title, unless", of relevance here, "there is in effect, and it and its use or intended use are in conformity with, a regulation issued under this section prescribing the conditions under which such additive may be safely used." *Id.* § 348(a)(2). Additionally, "[w]hile such a regulation relating to a food additive . . . is in effect, . . . a food shall not, by reason of bearing or containing such a food additive in accordance with the regulation or notification, be considered adulterated under section 342(a)(1) of this title." *Id.* § 348(a).

The FDA has issued regulations establishing and explaining its "generally recognized as safe" ("GRAS") regulatory regime for food additives. The FDA Commissioner is given the authority to determine whether a food additive is GRAS. *See* 21 U.S.C. § 348(b)–(d); 21 C.F.R. §§ 170.35, 170.38, 171.100(a); *see also Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 627 (4th Cir. 2015) ("Food additives generally are presumed unsafe until approved by the FDA, and the agency regulates the conditions under which approved additives may be used safely."). In 21 C.F.R. § 170.30, the FDA establishes how a food additive may be classified as GRAS and notes, in 21 C.F.R. § 182.1(a) and (d), that "[i]t is impracticable to list all substances that are [GRAS] for their intended use" but that many substances that are GRAS "are listed in this part." Indeed, in 21 C.F.R. § 182.10, the FDA lists "grains of paradise" as a "spice[] and other natural seasoning[] and flavoring[]" that is GRAS. *See also* Substances Generally Recognized as Safe; Spices, Seasonings,

12                          Opinion of the Court                      20-10677

Flavorings, Essential Oils, Oleoresins, and Natural Extractives, 25
Fed. Reg. 404 (Jan. 19, 1960).

Marrache argues that the district court erred in finding that
the Food Additives Amendment grants the FDA broad regulatory
authority to control the introduction of food additives into inter-
state commerce and that, as such, section 562.455 is preempted by
the Food Additives Amendment and its implementing regulations.
Specifically, he asserts that the FDA's authority under the Food Ad-
ditives Amendment "is quite narrow and focused - - it is to keep
unsafe food additives out of the market" and that the fact that
"[o]nce the food additive is determined to be GRAS, there is no
longer an issue as to whether it is safe for consumption . . . does not
mean that the food additive must be allowed to be placed on the
market."  Marrache therefore claims that there is no directive un-
der the Food Additives Amendment (and its accompanying regula-
tions) that because a food additive is GRAS, it must be permitted
to be sold.

The Supremacy Clause of the Constitution "supplies a rule
of priority," *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1901
(2019), and provides that the "Constitution, and the Laws of the
United States . . . shall be the supreme Law of the Land; and the
Judges in every State shall be bound thereby, any Thing in the Con-
stitution or Laws of any State to the Contrary notwithstanding,"
U.S. Const. art. 6, cl. 2.  Thus, where a federal law and a state law
conflict, "federal law trumps state law."  *Fla. State Conf. of
N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1167 (11th Cir. 2008).  And

"[f]ederal regulations have no less pre-emptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982); *accord Wyeth v. Levine*, 555 U.S. 555, 576 (2009).

The preemption doctrine identifies the following three categories: (1) express preemption; (2) field preemption; and (3) conflict preemption. *See Browning*, 522 F.3d at 1167. "Express preemption occurs when Congress manifests its intent to displace a state law using the text of a federal statute." *Id.* While Congress's "express statement on pre-emption is always preferable, the lack of such a statement does not end the inquiry." *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 939 (11th Cir. 2013) (quoting *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 n.5 (2011)). Indeed, "[s]tate law can be impliedly preempted by federal law in cases of field preemption and conflict preemption." *Id.* "Field preemption exists where Congress determines that a certain field must be regulated exclusively by the federal government." *Id.* Conflict preemption occurs "where (1) 'compliance with both federal and state regulations is a physical impossibility,' or (2) 'the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012); *see also Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) ("[A] high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 111 (1992)))). As the Supreme Court has recently recognized, however, these different categories

"are not rigidly distinct." *Va. Uranium*, 139 S. Ct. at 1901 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 n.6 (2000)).

In examining preemption issues, our analysis is guided by two principles. "First, 'the purpose of Congress is the ultimate touchstone in every pre-emption case.'" *Wyeth*, 555 U.S. at 565 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). "Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." *Graham*, 857 F.3d at 1186 (quoting *Lohr*, 518 U.S. at 486); *accord Fresenius*, 704 F.3d at 939 ("We use our judgment to determine when state law creates an unconstitutional obstacle to federal law, and 'this judgment is informed by examining the federal statute as a whole and identifying its purpose and intended effects.'" (quoting *Ga. Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1263 (11th Cir. 2012))). Second, we assume that "the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." *Fresenius*, 704 F.3d at 939–40 (quoting *Arizona*, 567 U.S. at 400); *accord Wyeth*, 555 U.S. at 565, 575 (explaining the presumption against preemption). This principle particularly applies in a case "in which Congress has 'legislated . . . in a field which the States have traditionally occupied.'" *Lohr*, 518 U.S. at 485 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). For example, "the supervision of the readying of foodstuffs for market has always been deemed a matter of peculiarly local concern," and "the States have

always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders." *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144 (1963) (quoting *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894)). Therefore, "[f]ederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Nat'l Ass'n of State Util. Consumer Advocs. v. FCC*, 457 F.3d 1238, 1252 (11th Cir. 2006) (quoting *Fla. Lime*, 373 U.S. at 142).

Here, the district court determined that federal law preempted section 562.455 based on conflict preemption because section 562.455 frustrated the purposes and objectives of the Food Additives Amendment and its implementing regulations. We conclude, however, that section 562.455 is not preempted by the Food Additives Amendment and its implementing regulations because no conflict exists between federal and state law.

First, Defendants have failed to show how compliance with the Food Additives Amendment and its implementing regulations—federal law—and section 562.455—state law—would be a physical impossibility. *See Wyeth*, 555 U.S. at 573 ("Impossibility pre-emption is a demanding defense."). While the FDA has determined that grains of paradise is GRAS under the Food Additives Amendment, *see* 21 C.F.R. § 182.10, i.e., permitting grains of paradise to be included in food or alcohol, neither the Food Additives

16                    Opinion of the Court                    20-10677

Amendment nor its implementing regulations require states to al-
low the sale of alcohol containing an additive once that additive is
deemed GRAS.  In other words, the fact that grains of paradise can
be included in alcohol under federal law does not mean that federal
law mandates individual states to allow the sale of alcohol contain-
ing grains of paradise.  For example, although it would undoubt-
edly be inconvenient, Defendants could comply with both federal
law and state law by selling Bombay without grains of paradise in
Florida while selling Bombay with grains of paradise in other states.
Thus, we find no physical impossibility preventing Defendants'
compliance with both federal law permitting grains of paradise to
be included in alcohol and section 562.455 banning the inclusion of
grains of paradise in alcohol sold in Florida.  *Cf. Fla. Lime*, 373 U.S.
at 133–34, 139, 142–44 (explaining that there was not a physical im-
possibility of dual compliance with a California law that gauged av-
ocados' maturity based on oil content and prohibited the sale of
avocados under a certain oil content and federal regulations gov-
erning the marketing of Florida avocados based on date, size, and
weight, as the record evidence demonstrated that Florida avocado
growers could avoid rejection under California law and still comply
with the federal regulations); *Fresenius*, 704 F.3d at 941 (finding no
physical impossibility of compliance with a federal regulation al-
lowing certain exemptions from a physician self-referral ban and a
Florida law disallowing those exemptions because the physicians
employed by the appellants could "comply with [Florida law] with-
out neglecting any obligations under federal law").

Second, Defendants failed to demonstrate that section 562.455 frustrates Congress's purpose in enacting the Food Additives Amendments. Defendants urge us to consider statements contained in the legislative history of the Food Additives Amendment, as the district court did in its analysis. Specifically, Defendants point to: (1) statements in a Senate Report concerning the Food Additives Amendment that a "flaw in existing law" had "unnecessarily proscribe[d] the use of additives" and that "existing law should be changed to permit the use of such . . . when the proposed usages of such additives are in amounts accepted by the [FDA] as safe," *see* S. Rep. No. 2422, at 2 (1958), and (2) a statement in the Congressional record suggesting that the purpose of the Food Additives Amendment was both "to protect the health of consumers by requiring manufacturers of food additives and food processors to pretest any potentially unsafe substances which are to be added to food" and "to advance food technology by permitting the use of food additives at safe levels," 104 Cong. Rec. 17,413 (daily ed. Aug. 13, 1958). Based on this legislative history, Defendants argue that Congress's purpose in enacting the Food Additives Amendment was to "establish a national repository of safe ingredients upon which consumers and manufacturers could rely" and "to prevent rules that unnecessarily prohibit access to safe food ingredients."

We decline Defendants' invitation to find section 562.455 preempted based on this legislative history. When interpreting a statute, "we do not typically 'resort to legislative history' when a statute is relatively clear," especially not "to undermine the plain

meaning of the statutory language." *CSX Corp. v. United States*, 909 F.3d 366, 369 (11th Cir. 2018) (quoting *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000)). This principle equally applies to our preemption analysis. *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 519–21 & n.19 (1992). "'[E]vidence of pre-emptive purpose,' whether express or implied, must therefore be 'sought in the text and structure of the statute at issue.'" *Va. Uranium*, 139 S. Ct. at 1907 (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993))). Reviewing the statutory language of the Food Additives Amendment, Congress stated that its purpose in amending the FFDCA was "to prohibit the use in food of additives which have not been adequately tested to establish their safety," 72 Stat. at 1784, not to prevent states from regulating or banning food additives, even if the FDA recognizes such additives as GRAS. Indeed, Congress did not include in the text of the statutory language at issue the statements contained in the legislative history that Defendants rely upon when it enacted the Food Additives Amendment. "The 'plain' in 'plain meaning' requires that we look to the actual language used in a statute, not to the circumstances that gave rise to that language." *See CSX Corp.*, 909 F.3d at 369 (quoting *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224 (11th Cir. 2001))); *cf. Va. Uranium*, 139 S. Ct. at 1907–08.

Congress's purpose in enacting the Food Additives Amendment—as derived from the statutory text—was to prohibit unsafe food additives from being included in food and alcohol to protect the health and safety of the public. Section 562.455, which bans the

adulteration of alcohol with grains of paradise, does not frustrate that purpose, even if the FDA has determined that grains of paradise is GRAS.  We therefore conclude that section 562.455 is not preempted by the Food Additives Amendment and its implementing regulations because no conflict exists between federal and state law.

While we conclude that the district court erred in its reasoning for granting the dismissal of Marrache's claims based on conflict preemption, we nonetheless affirm the district court's dismissal of Marrache's amended complaint with prejudice.  "[A] prevailing party is entitled to defend its judgment on any ground preserved in the district court," *Mass. Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 481 (1976), and we "may affirm for any reason supported by the record, even if not relied upon by the district court," *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015).

In their motion to dismiss, Defendants moved to dismiss the amended complaint with prejudice based on several arguments. Of relevance to this appeal, Defendants asserted that FDUTPA contains a safe harbor provision that exempts conduct from violating FDUTPA if it is an act or practice required or specifically permitted by federal or state law.  Defendants further contended that Marrache's FDUTPA claims also failed to state a claim because they did not allege actual damages.[2]    Finally, Defendants asserted that

---

[2] The district court also found that dismissal was warranted on this ground.

Marrache failed to state a claim for unjust enrichment. Specifically, Defendants asserted that the amended complaint failed to contain any allegation that Plaintiff and the class members purchased Bombay from Bacardi or that the plaintiffs conferred a direct benefit on Defendants. Because Marrache's claims are not preempted, we now address whether the district court erred in granting with prejudice Defendants' 12(b)(6) motion to dismiss. *See Worthy v. City of Phenix City*, 930 F.3d 1206, 1216–17 (11th Cir. 2019).

## B. Whether Marrache states a claim under FDUTPA

### 1. *Stating a Claim under FDUTPA*

On appeal, Marrache contends that the district court erred in finding that he failed to state a claim under FDUTPA. Under FDUTPA, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Fla. Stat. § 501.204. Florida Statute § 501.211 permits an individual aggrieved by a FDUTPA violation to bring a private action to obtain a declaratory judgment that an act or practice violates FDUTPA. *Accord Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1207 n.5 (11th Cir. 2011). Of relevance here, a FDUTPA violation may be based upon any law or statute that "proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c).

The three elements of a consumer claim under FDUTPA are: "(1) a deceptive act or unfair practice; (2) causation; and (3)

actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985–86 (11th Cir. 2016); *accord City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008).  An objective test is used to determine whether an act is deceptive under FDUTPA, and "the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Carriuolo*, 823 F.3d at 983–84 (quoting *State, Office of the Att'y Gen. v. Com. Com. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007)); *accord Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007).  To establish an unfair practice, the plaintiff must show that it is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 489 (Fla. Dist. Ct. App. 2001)).  Actual damages under FDUTPA "are measured according to 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Carriuolo*, 823 F.3d at 986 (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)).  A plaintiff, however, cannot state a cause of action under FDUTPA if the consumer fails to plead that they suffered actual damages. *See Macias v. HBC of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997) (holding that plaintiff failed to state a cause of action under FDUTPA as she suffered no actual damages and affirming dismissal of complaint with prejudice).  Indeed,

"[t]he members of [a] putative class who experienced no actual loss have no claim for damages under FDUTPA." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 873 (Fla. Dist. Ct. App. 2006)). FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Barton*, 988 So. 2d at 86 (quoting *Rollins*, 951 So. 2d at 873).

### 2. *FDUTPA's Safe Harbor Provision*

In his FDUTPA claims, Marrache alleged that Defendants had "engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade or commerce" by adulterating Bombay with grains of paradise, in violation of section 562.455, and then knowingly selling it to Marrache and the other class members in violation of section 500.04(1)–(3), which prohibits (1) the "manufacture, sale or delivery, holding or offering for sale of any food that is adulterated," (2) the adulteration of any food, and (3) the receipt in commerce of any food that is adulterated. Marrache contends that Defendants' violations of sections 562.455 and 500.04 serve as predicates for his FDUTPA claims under section 501.203(3)(c), even though neither statute contains any language expressly stating that it qualifies as a FDUTPA violation. Marrache further argues that he has alleged "actual damages," as he and the other class members suffered actual damages by purchasing an illegal product—Bombay—that is "worthless" from Defendants. Below, the district court found that Marrache had not sufficiently alleged actual damages because section 562.455 was preempted by federal law,

making it legal for Defendants to sell Bombay containing grains of paradise, and that, as such, the Bombay was not "worthless."

Here, we need not decide whether violations of sections 562.455 and 500.04 proscribe unfair, deceptive, or unconscionable acts or practices that qualify as FDUTPA violations because Marrache's claims against Defendants fall under FDUTPA's safe harbor provision. *See* Fla. Stat. § 501.212. Specifically, Florida Statute § 501.212(a) provides that FDUTPA does not apply to "[a]n act or practice required or *specifically permitted by federal or* state *law.*" (emphasis added). Thus, an act specifically permitted by federal law cannot serve as the basis for a FDUTPA claim. While the Food Additives Amendment and its implementing regulations do not preempt section 562.455, the FDA has issued regulations determining that grains of paradise are designated GRAS pursuant to its authority under the Food Additives Amendment. 21 C.F.R. §§ 182.1, 182.10; *see also* 21 U.S.C. § 348 (explaining that a food additive is not deemed unsafe for purposes of 21 U.S.C. § 342(a)(2)(C) and that a food will not be considered adulterated where there is in effect a regulation issued prescribing the conditions under which the additive may be safely used). Because grains of paradise is a substance that is specifically permitted under federal law to be included in alcohol, FDUTPA's safe harbor applies and Marrache's FDUTPA claims against Defendants are barred by the safe harbor provision of FDUTPA. *Cf. Prohias v. AstraZeneca Pharms., L.P.*, 958 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2007) (finding that FDUTPA's safe

24                    Opinion of the Court                    20-10677

harbor applied where a drug's labeling was approved by the FDA and thus "specifically permitted" by federal law).

### 3. *Actual Damages under FDUTPA*

Even if the FDUTPA claims did not fall under FDUTPA's safe harbor provision, the district court found that dismissal was proper as Marrache failed to state a claim for actual damages under FDUTPA. As the district court found, Marrache did not allege that he and the other class members: (1) were unable to drink the Bombay, as the complaint alleges that they consumed the alcohol, (2) unsuccessfully sought a refund for or complained of the Bombay to Defendants, or (3) suffered any side effect, health issue, or harm from consuming the Bombay containing grains of paradise. Marrache also did not allege that the resale value of Bombay depreciated because it contained grains of paradise. Rather, he alleges that he and the other class members suffered actual damages by "purchas[ing] . . . an illegal product which is worthless."

Marrache argues that his allegation that the Bombay is worthless is sufficient to state a claim for actual damages under FDUTPA. Specifically, he argues that he was only required to plead a "direct allegation" of actual damages—and not specific facts—under the "notice pleading" requirement articulated by *Conley v. Gibson*, 355 U.S. 41 (1957), and cited to by this Court in *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001). But as the Supreme Court has clarified in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Federal Rule of Civil Procedure 8's

pleading standard "demands more than an unadorned, the-defend-ant-unlawfully-harmed-me accusation," and, "[t]o survive a mo-tion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, we look to see whether the plaintiff has pled "factual con-tent that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line be-tween possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 556–57). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Therefore, we must examine whether Marrache has pled sufficient facts to state a *plausible* claim for actual damages.

In support of his claim for actual damages, Marrache princi-pally relies on this Court's decision in *Debernardis v. IQ Formula-tions, LLC*, 942 F.3d 1076 (11th Cir. 2019). In *Debernardis*, the plaintiffs purchased dietary supplements containing a "new dietary ingredient," as defined by the FFDCA and the Dietary Supplement Health and Education Act ("DSHEA"). *See id.* at 1080–82. The plaintiffs alleged that the supplements were adulterated as defined by the FFDCA and DSHEA, i.e., presumed unsafe for human con-sumption, by the new dietary ingredient, and that, as such, the sale

of those supplements was illegal in the United States. *See id.* at
1081–82. The plaintiffs brought a putative class action against the
defendants based on the purchase of the supplements and asserted,
among other things, claims under FDUTPA, alleging that "the de-
fendants had engaged in unlawful, deceptive, and unjust conduct
when they sold the supplements." *Id.* at 1082. As to harm, the
plaintiffs alleged that "[e]ach plaintiff suffered an injury by purchas-
ing supplements that could not be 'legally sold or possessed' and
had 'no economic or legal value'" and that "[b]ecause the supple-
ments had no economic value, each plaintiff paid an 'unwarranted
amount' to purchase the supplements." *Id.* The defendants moved
to dismiss the complaint for lack of standing—specifically, for fail-
ing to allege an injury in fact—and the district court dismissed the
complaint. *Id.* at 1083.

On appeal, this Court reversed the dismissal for lack of
standing. *Id.* at 1089. This Court explained that an economic in-
jury qualifies as a concrete injury to establish an injury in fact and
that, under FDUTPA, "[a] person experiences an economic injury
when, as a result of a deceptive act or an unfair practice, he is de-
prived of the benefit of his bargain." *Id.* at 1084. This Court ex-
plained that, under the benefit of the bargain theory, damages are
calculated by determining "the difference in the market value of
the product or service in the condition in which it was delivered
and its market value in the condition in which it should have been
delivered according to the contract of the parties" and that "[o]rdi-
narily, when a plaintiff purchases a product with a defect, the

product retains some value, meaning her benefit-of-the-bargain damages are less than the entire purchase price of the product." *Id.* (quoting *Heller*, 454 So. 2d at 585). However, this Court recognized an exception when a "product is rendered valueless as a result of a defect," as "[w]hen a plaintiff receives a worthless product, his benefit of the bargain damages will be equal to the entire purchase price of the product." *Id.* (quoting *Heller*, 454 So. 2d at 585). Based on this theory, this Court "accept[ed], at least at the motion to dismiss stage, that a dietary supplement that is deemed adulterated and cannot lawfully be sold has no value." *Id.* at 1085. By purchasing an adulterated dietary supplement that Congress judged insufficiently safe for human consumption and banned from sale, the purchasers "received a defective product that had no value" and had suffered an economic loss. *See id.* at 1085–86. This Court, however, cautioned that it was "not deciding today whether a consumer who alleges he purchased a product that could not legally be sold under a different statutory scheme acquired a worthless product" and that its decision was "limited to the specific facts alleged in this case—that the plaintiffs purchased dietary supplements that Congress, through the [F]FDCA and DSHEA, had banned from sale with the purpose of preventing consumers from ingesting an unsafe product." *Id.* at 1088.

We decline to extend *Debernardis*'s limited holding, as this case is distinguishable. The Court in *Debernardis* emphasized "Congress's judgment" in banning the adulterated supplement as the basis for the supplement having no value at the motion to

dismiss stage.  *See id.* at 1085.  Unlike *Debernardis*, the FDA, as authorized by Congress, has specifically determined that grains of paradise is safe to be included in alcohol under its GRAS regime for food additives.  In other words, Congress has judged alcohol containing grains of paradise safe for human consumption.  Thus, even if the sale of Bombay containing grains of paradise is illegal under Florida law, Bombay certainly is not "worthless" in other states, as it is permitted to be sold under federal law and is thus not valueless under the benefit-of-the-bargain theory for actual damages under FDUTPA.  Under Florida law, "[t]he members of [a] putative class who experienced no actual loss have no claim for damages under FDUTPA." *Rollins,* 951 So. 2d at 873.  Indeed, FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Barton*, 988 So. 2d at 86 (quoting *Rollins*, 951 So. 2d at 873).  Because FDUTPA requires an aggrieved person to suffer actual damages, we conclude that Marrache has not pled a plausible claim for actual damages under FDUTPA.

Accordingly, we affirm the district court's dismissal of Marrache's FDUTPA claims because Marrache's FDUTPA claims fall under FDUTPA's safe harbor provision.  In the alternative, we also conclude that affirmance of the district court's dismissal of Marrache's FDUTPA claims is also warranted because Marrache failed to state a plausible claim for actual damages under FDUTPA claims.  We next address Marrache's unjust enrichment claim against Defendants.

## C.  Whether Marrache states a claim for unjust enrichment

Under Florida law, a claim for unjust enrichment is "to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (quoting *Butler v. Trizec Props., Inc.*, 524 So. 2d 710, 711 (Fla. Dist. Ct. App. 1988)).  "A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012); *accord Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004).  Additionally, "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017); *accord Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. Dist. Ct. App. 2009).

In his unjust enrichment claim, Marrache alleged that he and the other class members had "conferred direct benefits to the Defendants by purchasing Bombay . . . from Defendants at Winn-Dixie" and that Defendants "appreciated that benefit conferred . . . by virtue of [their] retention of the money paid for the Bombay." Marrache further alleged that "[i]t is inequitable for Defendants to retain the benefit as [Marrache] did not receive what [he] bargained

for: to wit a product which did not violate [sections 562.455 and 500.04(1)–(3)]" and that Defendants were unjustly enriched.  In its order, the district court found that Marrache failed to state a claim for unjust enrichment because section 562.455 was preempted by federal law and the Bombay therefore was not worthless.

Although section 562.455 is not preempted under federal law, we conclude that the district court did not err in finding that Marrache failed to state a claim for unjust enrichment.  In his amended complaint, Marrache did not allege that he and the other class members: (1) could not or did not drink the Bombay, (2) unsuccessfully sought a refund for or complained about the Bombay, or (3) suffered any side effect, health issue, or harm from consuming the Bombay containing grains of paradise.  Rather, Marrache alleged that the Bombay was "worthless" based on section 562.455's prohibition of the adulteration of alcohol with grains of paradise, a product which he claims that he and the other class members did not "bargain[] for."  As alleged by Marrache in his amended complaint, however, potential purchasers of Bombay are notified of the inclusion of grains of paradise in Bombay, as that fact is "prominently etched on each of its distinctive blue bottles." And Marrache does not allege that Defendants concealed that fact from the class.  Thus, Marrache and the other class members did in fact receive what they bargained for (and consumed, according to the amended complaint)—a gin that contains grains of paradise—a fact that was plainly and prominently stated on its bottles.  Because Marrache has not included any allegations as to how it would be

"inequitable" for Defendants to retain the benefit they received from Marrache and the other class members' purchase of Bombay, we therefore conclude that Marrache has failed to state a claim as to the third prong of his unjust enrichment claim.

In addition, as to his claim against Bacardi, Marrache failed to allege that he and the other class members conferred a direct benefit to Bacardi. As alleged in his amended complaint, Marrache and the other class members purchased bottles of Bombay from Winn-Dixie, not Bacardi. At most, Marrache has alleged that he and the other class members conferred an indirect benefit to Bacardi and, as such, cannot satisfy the first element of an unjust enrichment claim against Bacardi. *Cf. Extraordinary Title Servs.*, 1 So. 3d at 404 (affirming the dismissal of an unjust enrichment claim against a Florida utility company's parent company where the plaintiff had only paid, and only received benefits from, the Florida utility company and thus had not conferred a direct benefit to the parent company). Accordingly, we affirm the district court's dismissal of Marrache's unjust enrichment claims against both Defendants.

## D. Dismissal of the Amended Complaint With Prejudice

Lastly, Marrache asserts that the district court abused its discretion in dismissing his amended complaint with prejudice. However, this Court "has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). Because any attempt by Marrache to amend the claims in

32                     Opinion of the Court                 20-10677

his amended complaint would be futile, we conclude that the district court did not abuse its discretion in dismissing the amended complaint with prejudice. *See Hall*, 367 F.3d at 1263

## IV.   CONCLUSION

For the foregoing reasons, we affirm the district court's order dismissing with prejudice Marrache's amended class action complaint against Defendants.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 08, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  20-10677-DD
Case Style:  Uri Marrache v. Bacardi U.S.A., Inc., et al
District Court Docket No:  1:19-cv-23856-RNS

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>Bradly Wallace Holland, DD</u> at <u>404-335-6181</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs